## U. S. BEDDING CO. v. REGINA COHEN, Doing Business as H. COHEN FURNITURE CO.

Middle Section.   December 20, 1930.

J. Connie Covington and McGugin & Evans, of Nashville, for plaintiff in error, Bedding Co.

C. H. Rutherford, of Nashville, for defendant in error, Mrs. Cohen.

CROWNOVER, J. This was an action by the Bedding Company to recover from Mrs. Regina Cohen, doing business as H. Cohen Furniture Co., $350.83 on sworn account coming from Shelby county, the sale price for twenty-five mattresses sold by the plaintiff to the defendant plus storage charges and interest.

The action originated in a Justice of the Peace Court, and it was admitted in briefs that the sworn account was denied under oath. Judgment was rendered for the plaintiff, from which there was an appeal to the Circuit Court where the case was tried by the judge and a jury and resulted in a verdict for the defendant.

The plaintiff's motion for a new trial was overruled and it has appealed in error to this court and has assigned errors, which, when summarized, are:

(1) The court erred in not directing a verdict for the plaintiff, and there was no evidence to support the verdict for the defendant.

(2) The court erred in permitting the defendant to rely upon inconsistent defenses, that defendant had canceled the contract, and, that plaintiff had breached the contract in not furnishing samples and a salesman as agreed.

(3) The court erred in permitting defendant to prove that there was a custom among the merchants of Nashville to cancel contracts of sale by notifying the seller not to deliver the goods.

(4) The court erred in charging the jury that if there was a general custom prevailing at the time, permitting the purchaser to

cancel orders for goods, which custom was known to the plaintiff, and if the defendant canceled the order in accordance with the custom, there would be no liability.

(5) The court erred in charging the jury that if it found that the defendant had canceled the contract, which cancellation was accepted by the plaintiff, there could be no recovery, and also erred in admitting testimony as to notice and cancellation of the contract.

(6) The court erred in its charge as to the basis of recovery.

The defendant, Mrs. Regina Cohen, was the owner of a retail furniture business, operated under the name of the H. Cohen Furniture Co., in the City of Nashville, and her husband, H. Cohen, was manager of the business.

In April, 1927, Alex Mayor, a salesman for the U. S. Bedding Co., of Memphis, in company with E. W. Turnley, secretary of the Nashville Chair Co., called on H. Cohen at the H. Cohen Furniture Co.'s place of business in Nashville, and they sold to him for the H. Cohen Furniture Co. twenty-five mattresses at $12.50 each, making a total of $312.50. The contract was verbal. The mattresses were to be specially manufactured for the defendant and labeled with the H. Cohen Furniture Co.'s label, and to be shipped as soon as manufactured, and to be delivered to defendant through the plaintiff's representative, the Nashville Chair Co.

Mayor agreed to furnish the defendant samples of the mattresses and a salesman to assist in the sale of them.

A few days after the order for the mattresses was taken, H. Cohen became seriously ill and had to go to the hospital for an operation, and he told Turnley to cancel the order for the mattresses, to which Turnley agreed. Cohen says that he also canceled all outstanding orders for goods and then made his will.

On May 7, 1927, the mattresses were shipped from plaintiff's factory at Memphis to its representative, the Nashville Chair Co., at Nashville, for delivery to the defendant.

In December, 1927, H. Cohen wrote a letter to the plaintiff, canceling the order, which letter is as follows:

"Gentlemen:

"In reply to yours of December 7, will ask you to cancel our order as we cannot use the goods.

"Very truly yours,
"H. Cohen Furniture Company."

After some correspondence the plaintiff ascertained that the defendant would not take the mattresses, and it had them shipped back to Memphis, where it sold four of the mattresses for $30 and cut up the other mattresses and sold the cotton, from all of which it obtained $85.23, but it claimed that it had incurred expenses amounting to $32.17 and storage charges $30, making a total of

$62.17, and it has brought this suit on probated account for the price of the goods, as hereinabove stated.

It is the contention of the plaintiff that the contract was not attempted to be canceled until the letter of December 10, 1927. Turnley denies that the contract was canceled in May, and he and Mayor testified that he had no authority to make or to cancel a contract for the plaintiff. Turnley say that his only authority as representative of the plaintiff was to deliver the goods and receive payment therefor.

The defense is that the contract was canceled several days after the order was given and before the goods were manufactured, and that the cancellation was accepted by Turnley as the agent of the plaintiff. Two witnesses testified that they were present and heard Cohen cancel the order, to which Turnley agreed.

Turnley says that Cohen was an old customer of his, and that "he took Mayor to the defendant and put the sale over." Cohen says that he ordered the mattresses through Turnley. The Nashville Chair Co. was the agent of the plaintiff in Nashville for the purpose of handling and delivering the plaintiff's goods that were sold to customers in Nashville.

1. The assignments of errors that the court erred in not directing a verdict for the plaintiff and that there was no evidence to sustain the verdict, are not well made and must be overruled, for the reason that the seller has brought this action for the purchase price, when it should have brought an action for damages for non-acceptance of the goods.

The unpaid seller has one of three remedies: (1) an action for the purchase price, as provided in section 63 of the Uniform Sales Act of 1919, ch. 118; (2) an action for damages for non-acceptance of the goods, as provided in section 64; and (3) he may accept a rescission, as provided in section 65.

The plaintiff has brought this suit for the purchase price, but he has not brought himself within section 63 of the Uniform Sales Act, as the title had not passed as required by sub-sec. 1 of said sec. 63 (2 Williston on Sales (2 Ed.), sec. 560a-b), nor had the buyer agreed to pay the price on a day certain regardless of the delivery of the goods as required by sub-sec. 2 of said sec. 63 of the Sales Act (2 Williston on Sales (2 Ed.), sec. 575), nor did the seller notify the buyer that the goods were held by it as bailee for him as required by sub-sec. 3 of said sec. 63 of the Sales Act (2 Williston on Sales (2 Ed.), sec. 560c); but on the contrary has disposed of them by resale.

The unpaid seller having a right of lien as provided in secs. 53 and 54 of the Uniform Sales Act, may either publicly or privately resell the goods without notice of time and place of sale given to

the original buyer, where the goods are perishable, or where he expressly reserves the right of resale upon default in payment, or where the buyer has been in default in the payment of the price for an unreasonable time, but the only remedy given the seller thereafter is that he may recover from the buyer damages for any loss occasioned by the breach of the contract of sale, as provided in sec. 60 of said Uniform Sales Act.

If the seller resells on default of the buyer he is not entitled to retain a part payment, but may recover only the damages sustained by him. Boise Overland Co. v. Fearn, 38 Idaho, 590, 223 Pac., 534; Humphrey v. Sagouspe, 50 Nev., 157, 254 Pac., 1074.

Where the seller, on breach of contract, elects to pursue the remedy of resale, he waives all other remedies which he may have had. Humphrey v. Sagouspe, supra.

In other words, we are of the opinion that the plaintiff has brought this suit for the purchase price and is attempting to recover damages for the non-acceptance of the goods where he has resold them. In effect this is a variance between the pleading and the proof, and the suit cannot be maintained. See Coal Co. v. Daniel, 100 Tenn., 64, 42 S. W., 1062.

The assignment of error that there was no evidence to sustain the verdict, would have been sustained had plaintiff sued for damages for the non-acceptance of the goods, as there was proof not contradicted that the Nashville Chair Co. was agent for the plaintiff only for the purpose of delivering the goods already sold and collecting the price, and that Turnley was secretary of the Chair Company, and there was no proof that Turnley had authority to accept notice of and to agree to a rescission of the sale, as will be hereinafter more fully discussed under section 5 of this opinion.

2. We are of the opinion that the assignments of errors as to the inconsistent defenses and the court's charge thereon, are immaterial and must be overruled for three reasons, first, because the court merely stated in his charge the defenses, but did not tell the jury that if the plaintiff did not furnish samples and a salesman there would be no liability, second, a breach of agreement to furnish a salesman and samples will not defeat the right of the seller to recover, but any damages which the seller may have sustained by reason of the failure of the plaintiff to perform the agreement in this respect, may be set off by way of off-set or recoupment. Detroit Vapor Stove Co. v. J. C. Weeter Lumber Co., 61 Utah, 503, 215 Pac., 995; Detroit Vapor Stove Co. v. Farmers Cash Union, 61 Utah, 567, 216 Pac., 1075. If the buyer had actually cancelled the contract and had refused to take the goods for reasons other than that the seller had failed to furnish samples and a salesman, it was not necessary for the seller to offer to furnish them. And third, inconsistent

pleas are admissible and admissions in one plea are not available to plaintiff as against any other plea. 49 C. J., 282, sec. 348; St. Louis Type Foundry Co. v. Wisdom, 4 Lea, 692.

3 & 4. The assignments of errors complaining of the admission of testimony to prove a custom among merchants of Nashville to cancel contracts of sale upon notice to the seller not to deliver the goods, and as to the court's charge to the jury that if there was such a general custom prevailing at the time, known to the plaintiff, and if the defendant canceled the order in accordance with the custom, then there would be no liability, are well made and must be sustained, for the reason that such custom would be repugnant to the express terms of the contract and to the established law of Tennessee. Remedies are expressly provided the seller for the breach of a contract of sale in the Uniform Sales Statute, Acts of 1919, ch. 118, secs. 60 to 65. To permit a buyer who attempted to cancel a contract upon notice, to evade liability by proving a custom permitting buyers to cancel contracts at will on notice, would set at naught all contractual obligations and demoralize business.

"In numerous instances the courts have denied the right to prove a usage or custom in an action of contract on the ground of its illegality. For example, a custom has been held illegal and void where it is repugnant to the express terms of a contract, or opposed to the essence of the same, as in the case of a custom by which . . . one of the parties reserves the right, merely by custom, to throw up a contract at his pleasure without incurring liability for damages." 27 R. C. L., 167-8, sec. 17; Randall v. Smith, 63 Me., 105, 18 Am. Rep., 200; Charles v. Carter, 96 Tenn., 607, 36 S. W., 396.

5. The assignments of errors that the court erred in charging the jury that if it found that the defendant had canceled the contract, which cancellation was accepted by plaintiff, there could be no recovery, and also erred in admitting testimony of witnesses as to notice and cancellation of the contract, are well made and must be sustained, as there was no evidence that Turnley had authority to accept notice of and to agree to a rescission of the sale, but on the contrary there was proof, not disputed, that Turnley had no authority to accept service of notice or to agree to a rescission of the sale. At most Turnley was only a special agent and was not a general agent with broad power to contract at will and with general supervision of the plaintiff's business.

"Presumptively an agent is employed to make contracts, not to rescind or modify them, to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests for his

principal, or to increase his obligations and liabilities for the mere benefit of third persons, unless the principal knows or approves of such modifications by the agent. Thus an agent has no implied authority to extend the time for the performance of a contract, except where it is clearly within the scope of his agency.'' 2 C. J., 645-6, sec. 289.

"Ordinarily a sales agent is supposed to be employed to contract a sale, and has no implied power, once this is done, either to undo or to modify the contract, particularly where the principal has prescribed the limits, or terms upon which the agent may sell, of which the purchaser has actual or constructive notice, as where the contract or order expressly provides or recites that the agent shall have no power to change or modify the same. The sale completes the transaction, and there is no presumption, from the mere authority to sell, that the agency continues so as to enable the agent to rescind the sale, and accept a return of the property, or make another contract for the sale of the same property, or to offer the purchaser further inducements to carry out its terms, or to adjust the damages resulting from a breach of its terms." 2 C. J., 607-8, sec. 242.

After once entering into a contract of sale, the powers of the agent are exhausted, and he cannot afterwards cancel it and make another contract for the sale of the same property, or take back goods furnished that prove unsatisfactory to the customer. 1 Amer. & Eng. Ency. of Law (2 Ed.), 1005; 1 Mechem on Agency (2 Ed.), 902; Diversy v. Kellogg, 44 Ill., 114, 92 Am. Dec., 154; Ludwig v. Gorsuch, 154 Pa. St., 413.

Obviously a mere agent to deliver goods sold by the principal has thereby no authority to alter the terms of the sale. Schenck v. Griffith, 74 Ark., 557.

"Where the nature and extent of an authority orally conferred upon an agent are to be determined upon conflicting evidence, or to be implied from the facts and circumstances, the questions as to the nature and extent of the agent's authority and whether the particular act in controversy was within the scope of his authority are usually questions of fact for the jury, guided by proper instructions from the court. . . . But whether there is any competent evidence to establish the extent of the authority is a question of law for the court, and it has been held that such question should be disposed of by the court alone and should not be submitted to the jury where there is no competent evidence, or where it is clear and undisputed, or manifestly insufficient to prove the authority, or where the facts relating to the authority are undisputed and are such that reasonable minds could draw but one conclusion there-

from;" etc. 2 C. J., 962-4, sec. 733; Sou. Ry. Co. v. Pickle, 138 Tenn., 238, 197 S. W., 675.

Hence, we are of the opinion that the court erred in admitting testimony as to notice and cancellation of the contract without first showing the extent of the agent's authority, and that it also erred in submitting the question to the jury in the absence of proof that the agent had authority to accept cancellation, as no such authority will be presumed.

6. The court erred in his charge as to the basis of recovery. He was attempting to charge the jury on plaintiff's right of recovery for the sales price, when at most plaintiff was entitled to recover damages for any loss occasioned by the breach of the contract of sale, which is governed by sections 60 and 64 of the Uniform Sales Act.

The defendant having failed to make a motion for peremptory instructions, and several of the assignments of errors having been sustained, the judgment of the lower court is reversed and the cause remanded for a new trial in accordance with this opinion. The cost of the appeal is adjudged against the defendant, Mrs. Cohen, for which execution may issue, but the cost of the lower court will await the final determination of the case.

DeWitt, J., and Higgins, Sp. J., concur.